UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SARA EAGER,

      Plaintiff,

v.

ENHANCED RECOVERY
COMPANY, LLC,

      Defendant.
_____/

## Complaint

**I.   Introduction**

1. This is an action for damages, brought by a consumer against a debt collector for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and Michigan Occupational Code ("MOC"), M.C.L. § 339.901 *et seq.*

**II.   Jurisdiction**

2. This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

**III.   Parties**

3. Plaintiff Sara Eager is an unmarried, adult, natural person residing in Kent County, Michigan. Miss Eager is a "consumer" and "person" as the terms are defined and/or used in the FDCPA. Miss Eager is a "consumer," "debtor" and "person" as the terms are defined

1

and/or used in the MOC.

4. Defendant Enhanced Recovery Company, LLC ("ERC") is a Delaware limited liability company, with offices at 8014 Bayberry Road, Jacksonville, Florida 32256. The registered agent for ERC in Michigan is Capitol Corporate Services, Inc., 712 Abbott Road, East Lansing, Michigan 48823. ERC uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. ERC regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. ERC is a "debt collector" as the term is defined and/or used in the FDCPA. ERC is qualified to do business in Michigan for the stated purpose of "Third party debt collections via interstate commerce." ERC is licensed (No. 2401002129) by the State of Michigan to collect delinquent consumer debts in Michigan. ERC is a "collection agency" and "licensee" as the terms are defined and/or used in the MOC.

## IV. Facts

5. Miss Eager had a credit account which she used to purchase goods and/or services for personal, family and household purposes. Any resulting obligation to pay money was a "debt" as the term is defined and used in the FDCPA and MOC.

6. Miss Eager disputes the alleged debt.

7. Miss Eager refuses to pay the alleged debt.

8. Miss Eager resides with a natural, adult person named Mario Arrendondo.

9. Miss Eager has residential telephone service which rings to a land line telephone located at the residence of Miss Eager and Mr. Arrendondo. The land line telephone is connected to a telephone answering machine. Miss Eager and Mr. Arrendondo share and both

use the land line telephone and attached telephone answering machine.

10. In October and/or November of 2012, ERC used an automated dialing system and placed a telephone call the telephone shared by Miss Eager and Mr. Arrendondo and used a pre-recorded and/or computer generated voice to leave the following message on the telephone answering machine shared by Miss Eager and Mr. Arrendondo: "Hello. This message is for Sara Eager. If you are not this person, please delete this message as it is not for you. This is Enhanced Recovery Company. We are a collection agency attempting to collect a debt and any information obtained will be used for that purpose. Please contact me about this business matter at 800-501-7759 or visit www.payerc.com and provide the following reference number: 41071492."

11. ERC placed the described telephone call to the telephone shared by Miss Eager and Mr. Arrendondo and used a pre-recorded and/or computer generated voice to leave the above-quoted message on the telephone answering machine shared by Miss Eager and Mr. Arrendondo for the purpose of attempting to collect an alleged debt from Miss Eager.

12. The only reason ERC placed the described telephone call to the to the telephone shared by Miss Eager and Mr. Arrendondo and used a pre-recorded and/or computer generated voice to leave the above-quoted message on the telephone answering machine shared by Miss Eager and Mr. Arrendondo was in connection with efforts by ERC to collect an alleged debt from Miss Eager.

13. Mr. Arrendondo saw that there were messages on the telephone answering he shared with Miss Eager. Mr. Arrendondo reviewed the messages, and Mr. Arrendondo heard the above-quoted message left by ERC for Miss Eager on the telephone answering machine.

14. ERC communicated to Mr. Arrendondo that ERC was attempting to collect a debt from Miss Eager.

15. Mr. Arrendondo communicated to Miss Eager that ERC had left a message on the telephone answering machine shared by Miss Eager and Mr. Arrendondo that ERC was attempting to collect a debt from Miss Eager.

16. ERC communicated information regarding the alleged debt directly and indirectly to Miss Eager.

17. ERC communicated information regarding the alleged debt directly and indirectly to Mr. Arrendondo.

18. ERC did not obtain the prior consent of Miss Eager to communicate with Mr. Arrendondo in connection with the collection of the alleged debt.

19. ERC did not obtain the prior consent of Miss Eager to communicate to Mr. Arrendondo that ERC was attempting to collect a debt from Miss Eager.

20. Miss Eager has never given ERC permission to speak with Mr. Arrendondo regarding the alleged debt.

21. A debt collector may not communicate, in connection with the collection of a debt, with any person other than the consumer, except to acquire "location information" about the consumer. 15 U.S.C. § 1692b; 15 U.S.C. § 1692c(b).

22. The FDCPA defines "location information" to mean "a consumer's place of abode and his telephone number at such place, or his place of employment." 15 U.S.C. § 1692a(7).

23. A debt collector when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall not state that such

consumer owes any debt. 15 U.S.C. § 1692b(2).

24.     The FDCPA states that a debt collector when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall, "only if expressly requested, identify his employer." 15 U.S.C. § 1692b(1).

25.     ERC disclosed the name of its company in the message left by ERC and heard by Mr. Arrendondo, without an express request for such information by Mr. Arrendondo, violating the FDCPA.

26.     ERC used an automated dialing system to place a telephone call to a telephone number shared by Miss Eager and Mr. Arrendondo and use a pre-recorded and/or computer generated voice to leave the above-quoted message for Miss Eager on a telephone answering machine shared by Miss Eager and Mr. Arrendondo, without regard to whether the message might by heard by someone other than Miss Eager.

27.     ERC could have used other methods to communicate with Miss Eager.

28.     ERC could have chosen to communicate with Miss Eager by postal mail.

29.     ERC could have chosen to communicate with Miss Eager by speaking directly to Miss Eager by telephone.

30.     ERC could have chosen not to use an automated dialing system to place a telephone call to a telephone number and use a pre-recorded and/or computer generated voice to disclose that ERC was attempting to collect a debt from Miss Eager.

31.     ERC could have chosen to have a live person make the telephone call to Miss Eager and have the live person use discretion regarding whether to leave a recorded message for Miss Eager. Instead, to save money and increase its profits, ERC chose to use an auto-dialer to

place telephone calls and leave pre-recorded and/or computer generated messages on telephone answering machines, without regard for the privacy of consumers such as Miss Eager and without regard for the requirements of the FDCPA.

32. ERC violated 15 U.S.C. § 1692c(b) by leaving a recorded message on a voice mail, which resulted in a communication to Mr. Arrendondo that ERC was attempting to collect an alleged debt from Miss Eager. *Berg v. Merchants Association Collection Division, Inc.*, 586 F.Supp. 1336 (S.D. Fla. 2008).

33. ERC is a member of ACA International ("ACA").

34. ACA is a trade group for debt collectors. ACA has sent multiple writings to its members, including ERC, warning about the risks associated with violating the FDCPA by leaving a message on an answering machine or voice mail that could result in an unlawful disclosure to a third party that a consumer allegedly owes a debt.

35. ERC knowingly assumed the risk of violating the FDCPA by delivering a message stating that ERC was calling to collect a debt, knowing that the message might be heard by someone other than Miss Eager.

36. ERC in the pre-recorded and/or computer generated message left for Miss Eager on the telephone answering machine shared by Miss Eager and Mr. Arrendondo, warned others not to listen to the message, establishing that ERC recognized the likelihood that someone other than Miss Eager might hear the message.

37. ERC knowingly assumed the risk of violating the FDCPA by leaving a message on an answering machine, stating that ERC was calling to collect a debt from Miss Eager, while realizing that the message might be heard by someone other than Miss Eager.

38. It was unreasonable for ERC to assume that someone (such as Mr. Arrendondo) sharing a telephone and telephone answering machine with the consumer (such as Miss Eager) would obey ERC's command to "delete" a message left for the consumer without listening to the full message.

39. The message left by ERC on the telephone answering machine shared by Miss Eager and Mr. Arrendondo warned the listener to "delete" the message if the listener was not Miss Eager. However, the message did not instruct the listener to delete the message before listening to the entire message. Moreover, the only way for the listener to obtain sufficient information for the purpose of making ERC stop calling was to listen to the entire message.

40. ERC intentionally called the telephone number shared by Miss Eager and Mr. Arrendondo. ERC did not mis-dial the telephone number.

41. ERC did not maintain procedures reasonably adapted to avoid the above-described violations of the FDCPA.

42. Even if ERC did maintain procedures reasonably adapted to avoid the above-described violations of the FDCPA, ERC failed to follow those procedures.

43. ERC failed to maintain procedures reasonably adapted to avoid disclosing to a third party that a consumer owed a debt. Instead, ERC left a recorded message for a consumer on a telephone answering machine, knowing it was possible that the message might be heard by someone other than the consumer.

44. ERC failed to maintain procedures reasonably adapted to avoid disclosing to Mr. Arrendondo that Miss Eager owed an alleged debt.

45. ERC scripted and intended to speak the pre-recorded and/or computer generated

words that were spoken by ERC and left on the telephone answering machine shared by Miss Eager and Mr. Arrendondo.

46. ERC has been sued multiple times for allegedly violating the FDCPA by using an automated dialing system to place a telephone call and using a pre-recorded and/or computer generated voice to deliver a message for a consumer in efforts to collect a debt which resulted in an unlawful disclosure to a third party that ERC was attempting to collect a debt from the consumer. Despite those lawsuits, ERC has made the business decision to continue to engage in debt collection practices that are known by ERC to periodically violate the law.

47. The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

48. ERC, to increase its business and profits, has knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

49. The acts and omissions of ERC and its employees done in connection with efforts to collect the alleged debt from Miss Eager were done intentionally and wilfully.

50. ERC and its employees intentionally and wilfully violated the FDCPA and MOC.

51. As an actual and proximate result of the acts and omissions of defendant and its employees, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, humiliation

and suffering for which she should be compensated in an amount to be established by jury and at trial.

## V.     Claims for Relief

### Count 1– Fair Debt Collection Practices Act

52.    Plaintiff incorporates the foregoing paragraphs by reference.

53.    Defendant has violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)    Defendant violated 15 U.S.C. § 1692b;

b)    Defendant violated 15 U.S.C. § 1692c;

c)    Defendant violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt; and

d)    Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)    Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)    Such further relief as the court deems just and proper.

### Count 2 – Michigan Occupational Code

54.    Plaintiff incorporates the foregoing paragraphs by reference.

55.    Defendant has violated the MOC. Defendant's violations of the MOC include,

but are not necessarily limited to, the following:

a) Defendant violated M.C.L. § 339.915(m) by bringing to public notice that the consumer is a debtor;

b) Defendant violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

c) Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

d) Defendant violated M.C.L. § 339.919.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to M.C.L. § 339.916(2);

b) Treble the actual damages pursuant to M.C.L. § 339.916(2);

c) Statutory damages pursuant to M.C.L. § 339.916(2);

d) Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2); and

e) Equitable relief pursuant to M.C.L. § 339.916(1).

**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: November 12, 2012

Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com